UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,

                 Plaintiff,                 Crim. No. 06-329-HA

                                                     OPINION AND ORDER

      v.

LUCIO JOAQUIN CAMARILLO; and
RODOLFO LEON CAMARILLO also known
as Guillermo Chavez-Sanchez and
Guollermo Chavez,

                 Defendants.

HAGGERTY, Chief Judge:

      In August 2006, defendants Rodolfo Camarillo and Lucio Camarillo were indicted for one count of Conspiracy to Structure Financial Transactions. On April 18, 2007, the government filed a superseding indictment, adding a second count of Conspiracy to Structure Financial

Page 1    Opinion and Order

Transactions against Lucio Camarillo. Currently pending before the court are defendants' Motion to Suppress Evidence (Cellular Telephone) [50], Motion to Suppress Statements [52], Motion to Suppress Evidence [54], Motion in Limine [70], and Motion for *Franks* Hearing/Motion to Suppress Seizure of Hummer [79]. Testimony and oral argument regarding these motions was heard in court on February 26, 2007 and July 5, 2007. For the following reasons, defendants' motions are denied in part and granted in part.

## **FACTUAL BACKGROUND**

The government accuses defendants Lucio Camarillo and Rodolfo Camarillo of conspiring to structure financial transactions for the purpose of causing Vic Alfonso Cadillac/Hummer to fail to file a report under 31 U.S.C. § 5313(a). The government also accuses Lucio Camarillo of one additional count of Conspiracy to Structure Financial Transactions, in connection with a 2002 purchase at Link Pontiac, Inc. in Milwaukie, Oregon.

The government alleges that on September 19, 2005, Lucio Camarillo paid $500.00 in cash to Vic Alfonso Cadillac/Hummer toward the purchase price of a 2006 Hummer H-2 (H-2). Ten days later, Lucio Camarillo made a second cash payment of $9,500.00, and completed some of the purchase documents for the vehicle. The dealership then contacted Special Agent David Tyree (Agent Tyree), due to concerns about the amount of the cash payment. The next day a trained narcotics detection dog alerted to the odor of narcotics on the $9,500.00 cash payment.

The government alleges that during the following week, Lucio Camarillo and Rodolfo Camarillo purchased a total of seven cashier's checks from four different banks, at seven different locations. Each check was for less than $10,000, and each was made payable to Vic Alfonso Cadillac.

On December 12, 2005, Agent Tyree submitted an affidavit in support of an application for a seizure warrant and the court issued the warrant. The facts upon which the affidavit sought to establish probable cause are as follows:

1. On September 19, 2005, Lucio Camarillo paid $500 in cash to Vic Alfonso Cadillac/Hummer toward the purchase of a 2006 Hummer H-2. On September 29, he paid another $9,500 in cash to Vic Alfonso Cadillac, and he agreed to pay the balance when he took possession of the car.

2. The cash was wrapped in colored rubber bands, Vic Alfonso Cadillac/Hummer kept the cash in a bank bag, and a drug dog, Xtro, alerted to the cash when it was placed in a paper bag next to four other empty paper bags.

3. Lucio Camarillo used an Oregon ID card which had an address of 1152 Cleveland, Woodburn, OR, a residence which did not appear occupied.

4. Lucio Camarillo used his true social security number on the purchase documents, and showed that he earned $28,000 a year at a company called Mohawk Plastics.

5. The state of Washington Employment Security Department reported that a person using Lucio Camarillo's social security number, the name L. Martinez, and an address of 701 A St. NE, Auburn, WA earned $12,267.56 at Mohawk Northern in the first and second quarters of 2005, and $25,510.08 in 2004; and that a person named Lucio Camarillo used that social security number to earn $1,212 at Wyles Bros in 2003.

6. The telephone number listed in Camarillo's purchase documents was subscribed to Misty Camarillo, and the telephone toll records for that number had contact with telephone numbers that have been identified in nine separate Drug Enforcement Administration (DEA) investigations.

Based on these facts, the court issued a seizure warrant for the H-2.

According to the government, on December 13, 2005, Lucio Camarillo paid $6,168 in cash for the H-2, and paid the remaining $44,000 balance with the cashier's checks. The next day, Rodolfo took possession of the H-2. Special Agent Tyree and other agents planned to execute the seizure warrant for the H-2-, and agents followed the H-2 as it left the dealership.

After the vehicle stopped at the Multnomah Falls exit on I-84, Agent Tyree approached Rodolfo Camarillo, identified himself and proceeded to speak with Rodolfo Camarillo and the other occupants of the car. Agent Tyree then conducted a pat-down search of Rodolfo Camarillo, during which Rodolfo Camarillo presented a Washington state driver's license which reflected the name Guillermo Chavez. Agent Tyree continued to address defendant as Guillermo Chavez for the rest of the encounter. Agent Tyree testified that Rodolfo Camarillo never corrected him as to his name during this time.

According to Agent Tyree, he then told the occupants of the car that the court had issued a seizure warrant for the vehicle and that he would like to explain this to them in more detail. He offered that they all enter the vehicle and turn on the heater, due to the cold weather conditions. Once inside the vehicle, Agent Tyree testified that he read the face sheet of the seizure warrant, asked if they had any questions, explained that they were not under arrest, but that he would like to ask them some questions. Agent Tyree testified that he advised Rodolfo Camarillo of his *Miranda* warnings in Spanish, Rodolfo Camarillo said he understood and agreed to speak with Agent Tyree about the purchase of the H-2.

Rodolfo Camarillo said he picked up the H-2 for his uncle, Lucio Camarillo, and he was supposed to meet Lucio Camarillo at a Denny's restaurant in Auburn, Washington. In response to Agent Tyree's questions about how the family could afford such an expensive vehicle, Rodolfo Camarillo told the agent that the family members had pooled their money to buy the H-2, but said he did not know if Lucio Camarillo was involved with the sale of drugs.

Agent Tyree asked Rodolfo Camarillo for his telephone number. According to Agent Tyree, Rodolfo Camarillo gave him his number, and Agent Tyree called that number and the

phone in Rodolfo Camarillo's hand began to ring.  Agent Tyree asked Rodolfo Camarillo if he could search the cell phone.  Agent Tyree testified that Rodolfo Camarillo responded "yes."  Rodolfo Camarillo then handed the cell phone to Agent Tyree, who handed the phone to Agent Smith, who was sitting in the back seat.  Agent Smith then retrieved the numbers on the cell phone and took notes.

The H-2 was seized according to the seizure warrant, and Rodolfo Camarillo was provided a receipt for the seizure.  The occupants of the vehicle, including Rodolfo Camarillo, were driven to a McDonald's restaurant, approximately five miles away.  During transport Rodolfo Camarillo was handcuffed, with his hands on his lap.  Once at McDonald's, the Agent removed the occupants' personal effects from the vehicle, and left the occupants at the restaurant.

On August 16, 2006, a federal grand jury returned an indictment in this case charging the defendants with Conspiracy to Structure Financial Transactions.  Arrest warrants issued for both defendants.

On August 29, 2006, DEA agents executed an arrest warrant for Rodolfo Camarillo at 701 Shotgun Lane, Yakima, WA.  At 9:15 a.m. that morning, agents knocked on Rodolfo Camarillo's door, identified themselves, were allowed into the house, and found Rodolfo Camarillo in a bedroom, in bed.  After entering the bedroom, Agent Tyree asked Rodolfo Camarillo to show his hands, and the agents reholstered their weapons after Rodolfo Camarillo complied. The agents told Rodolfo Camarillo that there was a warrant for his arrest, and then Agent Tyree allowed Rodolfo Camarillo to get dressed.  Agent Tyree testified that he read Rodolfo Camarillo his *Miranda* rights; Rodolfo Camarillo indicated that he understood those

rights and that he was willing to speak with Agent Tyree. Rodolfo Camarillo did not request a lawyer at this time, or ask to telephone a lawyer.

Agent Tyree then asked Rodolfo Camarillo for his consent to search the house for drugs, money and firearms. According to Agent Tyree, Rodolfo Camarillo verbally consented to the search, but when asked to sign a written consent-to-search form, he refused, stating that his attorney told him he should not sign anything. At this time, Rodolfo Camarillo was brought into the living room of the residence, handcuffed in front of his body. The agents then decided to apply for a search warrant for the residence.

While Agent Poe left the residence to prepare an application for a search warrant, Agent Tyree continued his interview with Rodolfo Camarillo. Agent Tyree explained that he would be appearing in federal court in Washington, and later Oregon, and that he would have the right to an attorney during the process. Rodolfo Camarillo responded he understood and agreed to talk to Agent Tyree. During this interview Rodolfo Camarillo was handcuffed in front of his body, he was allowed to use the restroom, and he was provided with food and drink. Agent Tyree testified that Rodolfo Camarillo was cooperative throughout the interview. According to Agent Tyree, Rodolfo Camarillo told him that he never gave the car dealership any money for the vehicle, that Lucio Camarillo purchased the vehicle, and that he did not sell drugs. Agent Tyree testified that the entire interview took between 25 to 35 minutes.

Agent Poe returned to the residence later that afternoon with a signed search warrant. While executing the search warrant, Agent Tyree found a business card for attorney Robert Smith inside Rodolfo Camarillo's wallet, but according to Agent Tyree, Rodolfo Camarillo did not make any reference to the card, or the attorney.

Lucio Camarillo was in Mexico at the time of Rodolfo Camarillo's arrest, and when notified of the arrest and pending indictment he retained counsel and made arrangements to appear before the court with counsel.

## STANDARDS

Reasonable searches and seizures usually require the police to have obtained a warrant, but there are certain exceptions to this warrant requirement. The burden of proof rests on the government to justify the search under one of the exceptions to the warrant requirement. *United States v. Hawkins*, 249 F.3d 867, 872 (9th Cir. 2001). If the government fails to meet this burden, the exclusionary rule generally prohibits the introduction of the evidence at trial. *Elkins v. United States*, 364 U.S. 206, 221-22 (1960). Illegally obtained evidence and all evidence derived from the illegally seized evidence must be excluded. *Wong Sun v. United States,* 371 U.S. 471, 484-85 (1963); *United States v. Patzer*, 277 F.3d 1080, 1086 (9th Cir. 2002).

### 1.     Warrant Requirement

In determining whether there is a basis for probable cause, a magistrate judge must assess the totality of the circumstances and make a "practical, common-sense decision." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). In considering the validity of the search warrant, the court is limited to the information and circumstances that were available to the magistrate at the time the warrant was issued. *United States v. Huguez-Ibarra*, 954 F.2d 546, 552 (9th Cir. 1992).

### 2.     Consent to Search

Consent to search given freely and voluntarily also waives the protections of the Fourth Amendment and obviates the need for a warrant or for probable cause. *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973). The Ninth Circuit considers five factors when determining

whether a person has freely consented to a search:

>(1) whether defendant was in custody;
>
>(2) whether the arresting officers had their guns drawn;
>
>(3) whether *Miranda* warnings were given;
>
>(4) whether the defendant was told he had the right not to consent; and
>
>(5) whether the defendant was told that a search warrant could be obtained.

*United States v. Cormier*, 220 F.3d 1103, 1112 (9th Cir. 2000). In *Cormier*, the Ninth Circuit also noted that "it is not necessary for all five factors to be satisfied in order to sustain a consensual search," but rather, "a district court [must] consider the totality of the circumstances when evaluating consent." *Id*. at 1113.

### 3.   Defendants' Statements

The Supreme Court set forth in *Miranda v. Arizona*, 384 U.S. 436 (1966), the proper legal standard for analyzing the admissibility of a defendant's statements when the defendant is in police custody and subject to interrogation. Specifically, the government must advise the defendant of the defendant's right to remain silent and the right to the presence of counsel before beginning custodial interrogation. *Id.* at 479. The *Miranda* Court held that the Constitution prohibits the government from using any of the defendant's statements that are the product of a custodial interrogation unless the government demonstrates that it used sufficient procedural safeguards to secure the defendant's Fifth Amendment privilege against self-incrimination. *Miranda*, 384 U.S. at 444-45.

The defendant may waive these rights, provided that the waiver is voluntary, knowing, and intelligent. *Id.* A valid waiver turns on the totality of the circumstances, including the

Page 8    Opinion and Order

defendant's background, experience, and conduct.  *N. Carolina v. Butler*, 441 U.S. 369, 374-75 (1979).  The court's determination of whether defendant voluntarily waived his constitutional rights turns on whether law enforcement officers acted to overbear the defendant's will.  *United States v. Okafor*, 285 F.3d 842, 847 (9th Cir. 2002).  Coercive police activity is a necessary element that must be found before a confession is ruled involuntary.  *Colorado v. Connelly*, 479 U.S. 157, 167 (1986).

There is a presumption against waiver.  *United States v. Bernard S.,* 795 F.2d 749, 752 (9th Cir. 1986).  To overcome this presumption, the government bears the burden of proving by a preponderance of the evidence that a defendant knowingly and intelligently waived *Miranda* rights.  *Connelly*, 479 U.S. at 168-69.

**DISCUSSION**

    **1.**    **Motion to Suppress Evidence (Cellular Telephone) [50]**

When stopped near Multnomah Falls, Agent Tyree searched Rodolfo Camarillo's cellular telephone.  Rodolfo Camarillo argues that he did not consent to the search; the government asserts that Rodolfo Camarillo consented.

Based on the government's representation that they do not intend to use any evidence of the cellular telephone in their case-in-chief, the court finds that the motion is moot.

    **2.**    **Motion for *Franks* Hearing/Motion to Suppress Seizure of Hummer [79].**

Defendants move the court to suppress the December 14, 2005, seizure of the H-2.  The motion is made under *Franks v. Delaware*, 438 U.S. 154 (1978), on the grounds that Agent Tyree's seizure warrant affidavit failed to state probable cause to believe that the money used to buy the car constituted "proceeds derived from the sale of narcotics."  The court heard argument

on this motion on July 5, 2007, granting defendants' motion for a *Franks* hearing. After conducting an evidentiary hearing, the court finds that there is no basis to grant defendants' motion to suppress the seizure of the H-2.

"Probable cause" for the purpose of forfeiture proceedings is the same standard used in search and seizure cases. *See United States v. One 1975 Mercedes 280S*, 590 F.2d 196, 199 (6th Cir.1978). It requires the court to "make a practical, common-sense decision whether, given all the circumstances set forth ... there is a fair probability" that the properties to be forfeited are the proceeds of illegal drug transactions. *Illinois v. Gates,* 462 U.S. 213, 238 (1983).

In his affidavit for a seizure warrant, Agent Tyree presented numerous factual bases establishing that the H-2 was purchased with the proceeds of illegal drug transactions. Agent Tyree noted that defendant Lucio Camarillo provided $9,500 in U.S. currency to Vic Alfonso Cadillac/Hummer in multiple bundles of small bills, wrapped in multicolored rubber bands. Large amounts of cash, separated by rubber bands, has been found to be sufficient evidence that the currency was used in drug trafficking, when consistent with other evidence of drug trafficking. *United States v. $15,460.00 in U.S. Currency*, 741 F. Supp. 819 (D.Or. 1990).

In this affidavit, Agent Tyree also described the deployment of a trained narcotics canine on the seized currency. The trained narcotics canine made a positive alert to an evanescent odor emitted by controlled substances that still remained on the currency. The Ninth Circuit has held that a canine sniff alone can supply the probable cause necessary for issuing a search warrant if the application for the warrant establishes the dog's reliability. *United States v. Cedano-Arellano*, 332 F.3d 568, 573 (9th Cir. 2003) ("the 'alert' by the certified, reliable narcotics detector dog was sufficient, even by itself, to support a finding of probable cause.") (citing *United States v.*

Page 10    Opinion and Order

*Lingenfelter*, 997 F.2d 632, 639 (9th Cir. 1993)).

The affidavit provides ample probable cause for the seizure of the vehicle based upon the the positive alert to the evanescent odor emitted by controlled substances that remained on the $9,500 divided into rubber banded bundles of small bills, in a manner consistent with drug trafficking. These factors, coupled with defendant Lucio Camarillo's use of different names at different workplaces, his evasiveness about his residence, the use of an identification card to purchase a motor vehicle, and the number of contacts between the phone number provided by defendant Lucio Camarillo and nine phone numbers from other DEA investigations all provide ample support of the magistrate judge's conclusion that the affidavit set forth probable cause to seize the H-2.

The factual bases included in Agent Tyree's affidavit, taken together, meet the necessary standard to establish probable cause to believe that the money used to buy the vehicle constituted "proceeds derived from the sale of narcotics." Accordingly, defendants' motion to suppress the seizure of the H-2 is denied.

### 3. Motion to Suppress Statements [52]

Defendants' challenge the validity of Rodolfo Camarillo's *Miranda* waiver, made after his arrest on August 29, 2006. Defendants' argue that Rodolfo Camarillo advised the agents that he wanted an attorney and that his waiver was not voluntary. The government responds that Rodolfo Camarillo waived his rights knowingly, voluntarily, and intelligently, and he did not invoke his right to counsel.

"For a confession obtained during a custodial interrogation to be admissible, any waiver of *Miranda* rights must be voluntary, knowing, and intelligent." *United States v. Vallejo*, 237

F.3d 1008, 1014 (9th Cir. 2001). In making that determination, courts look to "the totality of the circumstances including the background, experience and conduct" of the defendant. *Id.* (internal quotations and citations omitted). The government must prove a waiver "by a preponderance of the evidence." *Colorado v. Connelly*, 479 U.S. 157, 168 (1986).

Although the agents were armed and initially displayed their weapons when arresting defendant, they holstered their weapons after defendant's arrest. During the custodial interrogation, defendant was handcuffed with his hands in front of his body. The interview took place in defendant's home, in his living room. He was offered food and drink before the interview began, and was provided an opportunity to use the restroom. There was no evidence of deceit or trickery involved, nor evidence that agents made threats or promises to Rodolfo Camarillo.

Defendant fails to assert any facts that the police "acted to overbear the defendant's will." *See United States v. Okafor*, 285 F.3d 842, 847 (9th Cir. 2002). Defendant has not provided sufficient evidence that his will was overborne, or that his statements and waiver were anything but the product of a voluntary, knowing, and intelligent decision. Accordingly, the court denies defendants' motion to suppress Rodolfo Camarillo's statements [52].

    **4.**    **Motion to Suppress Evidence  [54]**

Defendants move to suppress all evidence obtained pursuant to the search warrant for 701 Shotgun Lane, arguing that probable cause did not exist to search the residence and no nexus existed between the indictment and the residence searched. The defendants also argue that a typographical error in the warrant, indicating that the residence was to be searched in 2005, not 2006, renders the search warrant defective.

In considering the validity of the search warrant, the court is limited to the information and circumstances that were available to the magistrate at the time the warrant was issued. *United States v. Huguez-Ibarra*, 954 F.2d 546, 552 (9th Cir. 1992). In determining whether there is a basis for probable cause, a magistrate judge must assess the totality of the circumstances and make a "practical, common-sense decision." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

The affidavit filed in support of the search warrant provided ample probable cause to believe that evidence of defendants' purchase of the H-2, their identities, their purchase of money orders, evidence of sources of income, bank accounts, and other indicia of occupancy and/or ownership of the residence would be found in the defendant's residence. Further, the typographical error on the date of when the search could take place (2005 instead of 2006) is not a fatal defect in the search warrant.

Defendants argue that the affidavit submitted in support of the search warrant failed to link the address of the residence searched to the indictment. When a magistrate judge issues a search warrant for a residence, he must find a "reasonable nexus" between the items sought and the residence. *United States v. Rodriguez*, 869 F.2d 479, 484 (9th Cir. 1989). Here, Rodolfo Camarillo had already spoke to the agents while at his residence at 701 Shotgun Lane and utilities for this residence were under Rodolfo Camarillo's name.

Accordingly, defendants' Motion to Suppress Evidence [54] is denied.

### 5. Motion in Limine [70]

Defendants move to exclude certain categories of evidence as inadmissible under Federal Rules of Evidence 401, 403, and 404(b). Since defendants' will be tried separately, the court will

address this motion as to each defendant.

At the outset, the government concedes that they will not be presenting any evidence that law enforcement obtained a GPS device for the H-2.

As to Lucio Camarillo, only statements of Rodolfo Camarillo that were made in furtherance of the conspiracy are deemed admissible. All other statements of Rodolfo Camarillo are inadmissible.

As to Rodolfo Camarillo, the court finds inadmissible any evidence pertaining to Rodolfo Camarillo's immigration status. The court also finds inadmissible any evidence pertaining to whether Rodolfo Camarillo reported income to the IRS. Evidence of Rodolfo Camarillo's involvement in drug trafficking is also inadmissible, as the government has not charged the defendants with drug crimes. While the government argues that evidence of drug trafficking is relevant in a case for Conspiracy to Structure Financial Transactions, the court finds that the case relied upon by the government, *United States v. Mitchell*, 31 F.3d 628, 631 (8th Cir. 1994), does not decisively establish that such evidence is admissible. In the discretion afforded the district court to make determinations under Rule 403, the court finds that the probative value of such evidence is outweighed by its prejudicial effect. Finally, the court finds admissible evidence pertaining to whether Rodolfo Camarillo had ever made bulk cash purchases and whether he had a license to sell vehicles at auction.

## **CONCLUSION**

The court finds that defendants' Motion to Suppress Evidence (Cellular Telephone) [50] is moot. Defendants' Motion in Limine [70] is GRANTED IN PART and DENIED IN PART. As to the remaining motions, defendants' Motion to Suppress Statements [52], Motion for *Franks*

Hearing/Motion to Suppress Seizure of Hummer [79], and Motion to Suppress Evidence [54] are DENIED.

IT IS SO ORDERED

DATED this   7    day of August, 2007.

                                            /s/ Ancer L. Haggerty
                                              Ancer L. Haggerty
                                        United States District Judge